# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **ZENA KAROUMI, BASIL Y. KAROUMI**, | 2:18-cv-10379 |
| Plaintiffs, | HON. TERRENCE G. BERG |
| v. | |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**, | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| Defendant. | |

Homeowners Zena Karoumi and Basil Y. Karoumi are suing Defendant Allstate Vehicle and Property Insurance Company ("Allstate") in connection with an insurance coverage dispute. Plaintiffs assert that Allstate breached its obligations under their insurance policy by refusing to cover water damage to their home allegedly caused by a broken water-supply line in 2017. Allstate denied Plaintiffs' claims on the grounds that the loss was not accidental, that Plaintiffs willfully concealed and misrepresented material facts about the loss and, further, that they failed to fully comply with the policy's terms. Both sides have moved for

summary judgment but for reasons discussed below both parties' motions for summary judgment (ECF Nos. 16, 20) will be denied.[1]

## BACKGROUND

Plaintiffs Zena and Basil Y. Karoumi, a married couple, purchased homeowner's insurance policy number 960 628 056 from Allstate. ECF No. 16-2 PageID.119. That policy insured Plaintiffs' home, located at 37339 Calka, Sterling Heights, Michigan, from October 9, 2016 through October 9, 2017. ECF No. 16-2 PageID.122. In the event Plaintiffs, the insureds, sought coverage for a loss under the policy, Allstate asserted "a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of you or others . . . ." ECF No. 16-12 PageID.157. The policy further provided that the insureds were obligated to "show [Allstate] the damaged property" "as often as [Allstate] reasonably require[d]." *Id.* Failure to comply with these and other policy provisions, according to the policy's language, obviated Allstate's duty to provide coverage if the insureds' noncompliance was prejudicial to Allstate. *Id.* In addition, the policy mandated that "[n]o suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms." ECF No. 16-2 PageID.173.

According to Plaintiffs, they arrived home from a family trip to Cedar Point, an amusement park in Sandusky, Ohio, on July 3, 2017 to

---

[1] Plaintiffs' brief is styled as a combined response to Defendant Allstate's motion for summary judgment and motion for summary judgment in favor of the Plaintiffs.

find their house flooding. ECF No. 16-3 PageID.180 (Basil Karoumi Dep.); ECF No. 16-4 PageID.188 (Zena Karoumi Dep.). In deposition testimony, they described finding a significant amount of water in the basement, as well as puddles of water in the kitchen and living room. *See* ECF No. 16-5 PageID.208–09 (Mariana Karoumi Dep.); ECF No. 16-3 PageID.182. Basil Karoumi traced the origin of the leaking water to a cabinet under the kitchen sink. ECF No. 16-3 PageID.180; ECF No. 16-5 PageID.208. He testified that, upon identifying the source of the flooding, he turned off the water main to prevent further damage to the house. ECF No. 16-3 PageID.181; *see* ECF No. 16-5 PageID.208.

That same evening, Zuhoor Danha, Plaintiff Zena Karoumi's sister-in-law, called Allstate to file an insurance claim for the water damage to Plaintiffs' home. ECF No. 16-4 PageID.188 (Zena Karoumi Dep.); ECF No. 16-5 PageID.208, 2011 (Mariana Karoumi Dep.); ECF No. 20-11 PageID.556 (Zuhoor Danha Dep.). Zuhoor Danha and her husband had been in Cedar Point with Plaintiffs, along with several other family members, and were dropping off some things at Plaintiffs' house when the water damage was discovered. ECF No. 20-11 PageID.556. Consistent with Danha's testimony, Allstate's records show the insurance company received notice of the water damage on July 3, 2017, at approximately 9:07 p.m. ECF No. 16-7 PageID.236 (Christopher Decker Aff.); ECF No. 16-8 PageID.239 (Allstate First Notice of Loss Snapshot). Allstate's initial loss description describes the damage as:

"Water pipe broke under sink causing interior water damage to kitchen, two living rooms, 3 bathrooms, 3 bedrooms and entire basement with 4 rooms, flooring walls, ceilings in basement." ECF No. 16-8 PageID.240.

On either July 3, 2017, the evening Plaintiffs discovered the flooding, or the next day (or both—the record is unclear), Kelly Putros, a handyman and friend of Basil Karoumi's cousin, came to the house to examine the leak. *Compare* ECF No. 16-3 PageID.181 (Basil Karoumi Dep.) ("Q: Okay. And this was, this was the day after you found the water, right, when Kelly was out there? A: Yes, the next day."), *and* ECF No. 16-5 PageID.209 (Mariana Karoumi Dep.) ("[Putros] came the next day because it was really late that day [the day Plaintiffs discovered the damage]") *with* ECF No. 16-6 PageID.225–26, 228–29 (Putros Dep.) (suggesting Putros came by the house the night Plaintiffs discovered the leak) *and* ECF No. 20-7 PageID.519 (Basil Karoumi Aff.) ("Mr. Putros came to the Home two times[,] on July 3, 2017, and July 4, 2017").

Putros is a self-taught handyman and does not have any kind of plumbing license. ECF No. 16-6 PageID.232. According to Basil Karoumi, on July 4, 2017, Putros, after examining the water-supply line below the kitchen sink, told Karoumi, "this pipe is loose and it is rusty as well." ECF No. 16-3 PageID.181. He then replaced the supply line with a new one he purchased at Home Depot or Lowe's and put the discarded supply line in his tool box. ECF No. 16-6 PageID.226–27. Putros testified that he is unsure where the old supply line is and believes he most likely threw

4

it away. ECF No. 16-6 PageID.227; ECF No. 20-7 PageID.519 ("Mr. Putros threw [away] the broken cold-water supply line on July 4, 2017."). According to his sworn affidavit, before throwing away the supply line Putros inspected the line and found no evidence that it had been intentionally broken or improperly installed. ECF No. 25 PageID.890. He further averred that Plaintiffs neither instructed nor authorized him to dispose of the allegedly broken supply line. *Id.*

After Zuhoor Danha's initial July 3, 2017 call to initiate an insurance claim on Plaintiffs' behalf, Allstate had difficulty reaching Plaintiffs to follow up. Claims Service Representatives attempted to reach Basil Karoumi by phone through an Arabic interpreter on July 3, 5, and 6, 2017. ECF No. 16-7 PageID.237. But Karoumi did not answer any of those phone calls and did not have his voice mail set up for Allstate representatives to leave a message. ECF No. 16-7 PageID.237. Christopher Decker, an Allstate Claims Service Representative, also emailed Basil Karoumi on July 6, 2017 "asking him to contact Allstate about his claim." ECF No. 16-7 PageID.237. The next day, Plaintiffs' daughter, Mariana Karoumi, contacted Decker to advise him that, because she is a fluent English-speaker, she would be the contact person for her parents' claim. ECF No. 16-7 PageID.237. In a subsequent conversation with Decker, Mariana Karoumi advised him that "a plumber had not yet been out to the house." ECF No. 16-7 PageID.237. Mariana Karoumi also told Andrew Feher, another Allstate Claims

Service Representative, on July 7, 2017, that "the plumbing repairs had not yet been completed." ECF No. 16-10 PageID.249 (Andrew Feher Aff.).

During the July 7 phone call, Feher specifically advised that the Karoumis "should not throw away whatever was damaged" when plumbing repairs were ultimately made because "Allstate would need to inspect the damaged parts." *Id.* It is uncontested that this is the first time Allstate expressly instructed anyone to preserve the allegedly damaged water-supply line. ECF No. 20-10 PageID.548 (Mariana Karoumi Aff.).

During a subsequent site inspection, Mariana Karoumi told Karrie Koneczny, one of the adjusters, that the plumbing repairs had actually been completed as soon as the Karoumis discovered the flooding but she was unsure of the identity of the plumber. ECF No. 16-9 PageID.246 (Karrie Koneczny Aff.); *see* ECF No. 16-7. Karoumi explained that, at the time of her earlier conversations with Decker and Feher, she had not yet realized "that Mr. Putros had already disposed of the cold-water supply line." ECF No. 20-10 PageID.548. After examining damage to the Karoumis' home, Koneczny said she "questioned the extent of the damages being claimed by the Karoumis" as "they were not consistent with what I was seeing at the property." ECF No. 16-9 PageID.247.

While the water damage to Plaintiffs' house was being remediated, they and their six family members lived, at least part of the time, at the home of Plaintiff Basil Karoumi's brother, Ziad Karoomi. *See* ECF No. 16-5 PageID.215. It was Ziad Karoomi's wife, Zuhoor Danha, who first

6

called Allstate to file the insurance claim on Plaintiffs' behalf. ECF No. 16-4 PageID.188 (Zena Karoumi Dep.). Ziad Karoomi and his wife Zuhoor Danha had also accompanied Plaintiffs on their trip to Cedar Point, from which they returned to discover the water leak. Plaintiffs stated in deposition testimony that they were paying $4,000 per month to live in Ziad Karoomi's home. ECF No. 16-5 PageID.215. Accordingly, they sought additional living expenses ("ALE") in the amount of $4,000 per month from Allstate. ECF No. 16-12 PageID.271–72 (Lori Davis Aff.). Allstate was "concerned" by the magnitude of this ALE demand, which it deemed excessive and potentially fraudulent. ECF No. 16-12 PageID.272.

Spurred in part by the unusually large ALE claim, Allstate's Claims Service Representative decided to investigate Ziad Karoomi's insurance claim history. *Id*. She found that in 2014 Karoomi had also filed a water damage claim—with Farm Bureau Insurance Company—that was almost identical to the one Plaintiffs submitted to Allstate in 2017. *See id*. Like Plaintiffs, Karoomi had reported water damage to his house caused by a broken supply line under his sink. *Id*.; *see* ECF No. 16-13 (Report on Karoomi's 2014 Claim). Remarkably, Karoomi had also told his insurer that he discovered the water damage after returning home from a water park in Sandusky, Ohio. ECF No. 16-13 at PageID.275. Karoomi's 2014 claim also involved Kelly Putros and Peggy Pauley—the same handyman and water mitigation vendor used by Plaintiffs. *Id*. Additionally, in connection with his 2014 insurance claim, Ziad Karoomi

told Farm Bureau Insurance Company that he was paying Putros $2,500 per month to reside at a house owned by Putros while his own home was being restored. ECF No. 16-13 PageID.280.

Allstate ultimately denied Plaintiffs' insurance claim on November 2, 2017, on the basis that "[t]he damage from the claimed July 3, 2017 water damage incident was not accidental, but was instead intentionally caused by you, and/or at your direction, and/or with your knowledge and consent." ECF No. 16-15 PageID.306 (Allstate Denial of Coverage). Allstate further asserted that Plaintiffs had "willfully concealed and misrepresented facts and circumstances of a material nature, and ha[d] otherwise engaged in fraudulent conduct in connection with these claims." *Id.* Additionally, Allstate explained that under the policy Plaintiffs could not bring any action against the insurer unless "there has been full compliance with all policy terms," referencing the policy provision requiring insureds to "show [Allstate] the damaged property" in the event of a covered loss. *Id.* at PageID.308–09.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of demonstrating an

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

Defendant Allstate urges that Plaintiffs' lawsuit must be dismissed on summary judgment because, by failing to preserve the allegedly damaged water-supply line, Plaintiffs triggered a policy provision that precludes them from filing any lawsuit or action against Allstate "unless

9

there has been full compliance with all policy terms." ECF No. 16-2 PageID.173. Plaintiffs in turn assert, among other arguments, that Allstate may not rely on the defense that Plaintiffs failed to preserve the supply line because Allstate did not immediately instruct Plaintiffs to preserve the supply line when Danha reported the loss on July 3, 2017. Additionally, Plaintiffs contend Allstate was not prejudiced by any failure on their part to comply with the policy.

To determine whether a party has complied with its obligations under an insurance policy, Michigan courts apply the substantial performance rule. *Durasevic v. Grange Ins. Co. of Mich.*, 328 F. Supp. 3d 770, 779 (E.D. Mich. 2018). "A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." *Gibson v. Group Ins. Co.*, 369 N.W.2d 484, 486 (Mich. App. 1985); *see Aleksov v. Auto Owners Ins. Co.*, No. 338264, 2018 WL 2222734, at *3 (Mich. Ct. App. May 15, 2018) (per curiam) (providing the same definition for substantial performance). Under the substantial compliance doctrine, "minor deviations may be overlooked" but deviations that would fundamentally alter the terms of performance will be deemed failure to perform the contractual obligations. *Aleksov*, 2018 WL 2222734 at *3 (citing *Gibson*, 369 N.W.2d at 486). Further, substantial compliance requires that "the insured must make a

10

'reasonable effort to provide information reasonably within its possession and with a sufficient degree of particularity to allow the insurer to make an informed review of the claim.'" *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 574 (6th Cir. 2005) (quoting *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich. 2001)).

"Under Michigan jurisprudence, whether there has been a substantial performance of a contract or, to the contrary, a material breach, is a question of fact for the trier of fact." *In re American Cas. Co.*, 851 F.2d 794 (6th Cir. 1988) (citing *Pratt v. Van Rensselaer*, 209 N.W. 807 (Mich. 1926)); *see Gordon v. Great Lakes Bowling Corp.*, 171 N.W.2d 225 (Mich. App. 19769) (whether substantial performance took place is "a question of fact to be determined by the jury."). Yet the Michigan Court of Appeals implicitly acknowledged, in *Aleksov v. Auto Owners Insurance Company*, a 2018 case, that trial courts in some contexts may themselves decide whether a contract was substantially performed. No. 338264, 2018 WL 2222734 (Mich. App. 2018). In *Durasevic v. Grange Insurance Company of Michigan*, 828 F. Supp. 3d at 779–80, for example, another court in this district—applying Michigan law—found that because the defendant insurance company had suspected the plaintiffs' insurance claim to be fraudulent, failure by two of the insured plaintiffs to comply with the policy by submitting required examinations under oath prejudiced the insurance company by preventing it from fully investigating the cause of the claimed loss. Accordingly, the district court,

on a motion for summary judgment, found that the plaintiffs' failure to submit examinations under oath meant they had not substantially complied with the conditions precedent of the insurance contract. *Id.* In contrast, in *Camaj v. Home Owners Insurance Company*, the Michigan Court of Appeals decided that an insured who failed to report a hit-and-run accident within 24 hours, a plain violation of the insurance policy, still had substantially complied with the policy because the insured's noncompliance did not prejudice the insurance company. No. 290664, 2010 WL 3385992, at *5 (Mich. Ct. App. Aug. 24, 2010). The Michigan Court of Appeals reasoned that a police investigation would have had limited utility because the accident occurred when it was dark outside, and there were no witnesses. *Id.* at *6.

Allstate's argument on summary judgment is essentially that Plaintiffs' lawsuit must be dismissed because their failure to preserve the allegedly broken supply line represents a lack of substantial compliance with the policy, which provides that "[n]o action or suit may be brought against us unless there has been full compliance with all policy terms." The specific policy term Allstate contends Plaintiffs failed to comply with states:

3. **What You Must Do After a Loss**

In the event of a loss to any property that may be covered by this policy, you must: [. . .]

    f)    as often as we reasonably require:

        1) Show us the damaged property. We have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of you or others . . .

ECF No. 16-2 PageID.157. The question for summary judgment purposes, therefore, is whether there is a genuine issue of material fact as to whether Plaintiffs' conduct in failing to preserve the removed water pipe so that it could be shown to the insurance company was a failure to substantially comply with the above policy term. That term contains two elements: (1) the insurance company must invoke its right to "reasonably require" the policyholder to show the damaged property; and (2) the policyholder must "show us the damaged property" and allow the insurance company to "view and inspect the loss as often as necessary" without "impeding" the insurance company from doing so.

There are genuine issues of fact concerning, first, whether the insurance company had "reasonably required" the showing of the damaged water pipe at the time it was removed and discarded and, second, whether the Plaintiffs' failure to retain or retrieve the water pipe "impeded" the insurance company from viewing and inspecting it. Although the record is less than clear as to exactly when the repair was

13

made and when the pipe was thrown away, it is plain that by the time Allstate requested that Plaintiffs preserve the supply line, on July 7, 2017, it had already been removed by Putros. ECF No. 16-10 PageID.249 (Andrew Feher Aff.). Whether Plaintiffs were required to preserve the supply line before Allstate specifically instructed that they do so, and whether they were required to take steps to retrieve the supply line after Putros threw it away, are questions for the factfinder. Although Plaintiffs suggest they had no control over the removed pipe once the repair had been done, Putros was acting on Plaintiffs' behalf. Likewise, whether Plaintiffs' actions impeded the insurance company's ability to view and inspect the removed pipe (and therefore constituted a failure to comply with the policy) is a factual question for the jury to resolve.

This case is not ripe for summary judgment because material facts remain in dispute concerning whether Plaintiffs substantially complied with the insurance policy. Because a finding that Plaintiffs substantially complied with the policy is prerequisite to Plaintiffs' right to bring this lawsuit, the Court at this juncture declines to decide additional questions raised by the Plaintiffs at the summary judgment phase, including those regarding spoliation and whether the policy (absent the substantial compliance preclusion at issue) provides coverage for Plaintiffs' claims.

## CONCLUSION

For these reasons, Defendant Allstate Vehicle and Property Insurance Company's motion for summary judgment (ECF No. 16) is

**DENIED**. The motion for summary judgment filed by Plaintiffs Zena Karoumi and Basil Y. Karoumi's is also **DENIED**.

Dated: August 21, 2019    s/Terrence G. Berg
                                  TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on August 21, 2019.

                                  s/A. Chubb
                                  Case Manager